UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD L. KAWCZYNSKI,<br><br>    Plaintiff/Counter-defendant,<br><br>v.<br><br>ROBERT J. KAWCZYNSKI,<br><br>    Defendant/Counter-claimant. | Case No. 18-cv-05709-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COUNTERCLAIM; DENYING LEAVE TO AMEND**<br><br>Re: Dkt. No. 41 |

    In this financial dispute between brothers Ronald and Robert Kawczynski, plaintiff Ronald's complaint alleges that defendant Robert defrauded Ronald in various financial affairs. Dkt. No. 1. Robert's amended counterclaim against Ronald asserts claims for (1) breach of contract; (2) unjust enrichment; and (3) money had and received. Dkt. No. 38. Before the Court is Ronald's motion to dismiss Robert's amended counterclaim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Dkt. No. 41. The Court finds that Robert's amended counterclaim pleads plausible claims for breach of contract and unjust enrichment but does not plead a plausible claim for money had and received. Therefore, the motion to dismiss is GRANTED IN PART and DENIED IN PART. Noting that Robert was previously given leave to amend but failed to allege sufficient facts to plead the claim for money had and received, the Court does not grant further leave to amend.

## I. BACKGROUND

### A. Allegations of the First Amended Counterclaim

The following facts are alleged in Robert's amended counterclaim. Dkt. No. 38. In deciding this motion, the Court assumes these allegations to be true and construes all facts in Robert's favor. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

In 2005, Robert loaned Ronald $42,851.47. Dkt. No. 38 at ¶ 2. Ronald stated that he needed the money to remodel his home in Monterey, California. *Id.*; *see also* Dkt. No. 39. On December 30, 2005, brothers Ronald and Robert entered into a joint venture establishing the brothers as co-owners and joint tenants with the right of survivorship of the Monterey property. *Id.* at ¶ 3; *see also* Dkt. No. 39. The brothers wrote the agreement in a deed stating: "Ronald . . . hereby grants to Ronald . . . and Robert . . . as Joint Tenants . . . the following described real property." Dkt. No. 39. As consideration for Robert becoming a joint tenant, the brothers verbally agreed that Ronald expected Robert to help manage the property by advertising for and managing tenants, administering mortgage payments, and paying utilities as well as other property-related expenses. Dkt. No. 38 at ¶¶ 3, 11. The verbal agreement also established that Robert would manage Ronald's other finances, such as paying Ronald's bills, and that Robert would pay down the mortgage on the property at Robert's discretion so as to minimize interest payments. Dkt. No. 38 at ¶ 3.

The brothers further agreed that Ronald would not pay Robert back for the $42,851.47 loan because Robert became entitled to half of the interest and profits of the property as a result of the joint tenancy. *Id.* Robert alleges that the deed, along with the verbal agreements related to the property and Ronald's finances, make up a joint venture agreement. *See id.* at ¶¶ 3, 11. Robert spent $136,752.55 of his own money paying down the mortgage in 2006 and managing the property per the commitments he made in the verbal agreement. *Id.* at ¶ 4. Robert also used his own money to pay down various other property-related debts in 2006. *Id.* After 2006, Robert continued making payments on Ronald's behalf, renting out the property, and managing tenants for the upper and lower

2

units. *Id.* at ¶ 5. Robert also resided in the lower unit for some time and only rented out the upper unit during that time. *Id.*

In 2018, Ronald filed suit against Robert and, in so doing, coerced Robert to remove his name from the deed. *Id.* at ¶ 6. Under duress, Robert agreed to remove his name. *Id*. After removing Robert's name from the deed, Ronald refused Robert's requests to sell the property and split the proceeds with Robert, to pay Robert for profits from the joint venture, or to pay Robert for half of the property value of at least $450,000. *Id.* at 5.

### B. Procedural History

Ronald's complaint alleges that Robert defrauded Ronald in various financial affairs. Dkt. No. 1. Robert filed a counterclaim. Dkt. No. 23. Ronald moved to strike the counterclaim as untimely, or, in the alternative, to dismiss the counterclaim. Dkt. No. 26. The Court denied the motion to strike and granted the motion to dismiss for failure to state a claim upon which relief can be granted, but granted Robert leave to amend to sufficiently allege a plausible claim. Dkt. No. 37; Fed. R. Civ. P. 12(b)(6). Robert filed an amended counterclaim, asserting claims for (1) breach of contract; (2) unjust enrichment; and (3) money had and received. *See* Dkt. No. 38. Ronald filed a motion to dismiss the amended counterclaim for failure to state a claim upon which relief can be granted. *See* Dkt. No. 41.

All parties consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 6, 14.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 8(a), a complaint must include a short and plain statement showing that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim also "must contain sufficient allegations of underlying

3

facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill*, 80 F.3d 336, 337–38. The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

**III. DISCUSSION**

The Court considers the causes of action of Robert's amended counterclaim in turn: (1) breach of contract; (2) unjust enrichment; and (3) money had and received.

**A. Breach of Contract**

Robert generally alleges that Ronald breached a contract with him. Dkt. No. 38 at 4–5. The elements of breach of contract under California law are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Marshall Wealth Mgmt. Grp., Inc., v. Santillo*, No. 18-cv-03510 (LHK), 2019 WL 79036, at *6 (N.D. Cal. Jan. 2, 2019) (quoting *Reichert v. Gen'l Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968)).

Here, Robert alleges that the deed and verbal agreements together form a joint venture agreement that constitutes a contract. Dkt. No. 38 at ¶ 11. Robert states that the core of the contract is the written deed, where Ronald granted Robert a joint tenancy in the property. *See id*. at ¶ 3. Robert alleges that the verbal agreements regarding Robert's management of the property and of Ronald's finances were made in consideration of Robert's joint tenancy interest acquired through the deed. *Id*. The amended counterclaim states that "[t]he parties agreed that since the parties were becoming joint owners of the Property that [Robert's] $42,851.47 loan would not be repaid because each party would be

4

entitled to half the interest and profits of the Property." *Id.* In performance of the verbal agreements, Robert managed the property and Ronald's finances. *Id.* Ronald breached the joint venture agreement by "coercing [Robert] to sign a deed taking his name off title to the Property," refusing to sell the property to split the net proceeds with Robert and refusing to pay Robert for half the value of the property. *See id* at ¶ 13.

The counterclaim provides enough factual allegations to put Ronald on notice and the allegations are sufficient to state a plausible claim for breach of contract. Therefore, the motion to dismiss is DENIED as to the breach of contract claim.

### B. Unjust Enrichment

Robert's next claim is for "Unjust Enrichment-Assumpsit." Dkt. No. 38 at ¶¶ 7–9. In California, unjust enrichment is not a standalone cause of action; rather, it is a form of restitution. *Pepper, N.A. v. Expandi, Inc.*, No. 15-cv-04066 NC, 2016 WL 1611039, at *3 (N.D. Cal. Apr. 22, 2016) (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010)). However, a claim for unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d Restitution § 2). Thus, "[w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id.*; *see also Khasin v. R.C. Bigelow, Inc.*, No. 12-cv-02204 WHO, 2015 WL 4104868, at *2 (N.D. Cal. July 7, 2015) (finding a cause of action of unjust enrichment proper when construed as a quasi-contract claim).

The counterclaim states that Ronald became indebted to Robert for at least half the value of the property because of the joint venture agreement. Dkt. No. 38 at ¶ 8. The counterclaim alleges two specific benefits that Robert conferred upon Ronald as a result of the joint venture agreement: (1) $42,851.47, which Robert originally loaned to Ronald but later forgave as part of the agreement; and (2) investments in the property in the amount of $161,753.12, as well as 10 years of managing the property and Ronald's personal finances. *Id.* at ¶¶ 3, 8. In return for Robert forgiving the $42,851.47 loan, the brothers allegedly

5

agreed that Robert would acquire half the interest and profits of the property. *Id*. at ¶ 3. In return for Robert investing $161,753.12 in the property, as well as managing the property and Ronald's finances for over 10 years, Robert expected "joint tenan[cy] joint owner[ship] of the Property." *Id*. at ¶ 8. Instead of conferring upon Robert the benefits that Robert expected per the agreement—interest, profits, and ownership of the property—Ronald allegedly demanded that Robert remove his name from the property title. *Id*. at ¶¶ 9, 13.

The counterclaim alleges that Ronald was unjustly enriched not only because Ronald demanded that Robert give up his interest in the property, but moreover because Ronald's demand was coercive. *Id*. at ¶ 13. The counterclaim states that Ronald "coerc[ed] [Robert] to sign a deed taking his name off title to the Property" and that Robert, "under duress . . . reluctantly agreed to take his name off the deed." *Id*. at ¶¶ 6, 13. Robert has alleged that Ronald coerced him to give up his interest in the property, making Ronald the sole beneficiary of Robert's investments. Accordingly, the Court finds that the amended counterclaim pleads facially plausible facts sufficient to state a claim for unjust enrichment. The motion to dismiss is DENIED as to the unjust enrichment claim.

### C. Money Had and Received

Finally, Robert asserts a claim for "money had and received." *Id*. at 5–6. A claim for money had and received makes a defendant indebted to a plaintiff "for money had and received by the defendant for the use of the plaintiff." *Manlin v. Ocwen Loan Servicing, LLC*, 2018 WL 3326656, at *9 (C.D. Cal. June 5, 2018) (quoting *Kandel v. Brother Int'l Corp*., 2009 WL 9100406, at *1 (C.D. Cal. Feb. 13, 2009)). Although the claim is one at law, it arises in equity when "one person has received money which belongs to another and which in equity and good conscience . . . should be returned." *Hendrickson v. Octagon, Inc.*, Nos. 14-cv-01416 CRB, 225 F. Supp. 3d 1013, 1032 (N.D. Cal. Dec. 2, 2016) (internal quotation marks omitted) (quoting *Mains v. City Title Ins. Co.*, 34 Cal. 2d 580, 586 (1949)). The elements are as follows: (1) defendant received money; (2) the money defendant received was for plaintiff's use; and (3) defendant is thereby indebted to

plaintiff. *Fireman's Fund Ins. Co. v. Commerce & Indus. Co.*, No. 98-cv-1060 VRW, 2000 WL 1721080, at *8 (N.D. Cal. Nov. 7, 2000).

Here, the amended counterclaim does not allege sufficient facts to state a claim for money had and received. The counterclaim asserts that Ronald "became indebted to [Robert] . . . for at least $161,753.12" but only says that the money was "received for the benefit of [Robert] because he was supposed to be entitled to receive 50% of the value of the Property as a result of having paid said money . . . pursuant to the Joint Venture Agreement." Dkt. No. 38 at 5. The counterclaim does not state that Robert gave Ronald $161,753.12, but instead alleges that Robert himself invested that money directly into the property. *Id.* at ¶ 8.

Further, even if the counterclaim did allege that Ronald received $161,753.12 vis-à-vis the value of the property and debts owed by Ronald, the counterclaim is factually vague as to what Robert invested the money in. The counterclaim alleges only that Robert invested $136,752.55 by paying down the mortgage on the property and invested additional money by paying down the following debts: "HELOC $133,455; Home Depot $12,225; Sharon Tucker $3,380; VISA $8,330; [and American Express] $1,831." *Id.* at ¶ 4. The counterclaim is unclear as to whether those amounts listed were the total owed to each debtor or the total that Robert paid. Also, the alleged payment of $136,752.55 and the other listed payments do not amount to $161,753.12. As pled, the math simply does not add up. Without better accounting, the Court struggles to understand the $161,753.12 number: what was paid, to whom, and when? Without such basic details, the counterclaim fails to allege any element of this claim. The Court cannot determine from the pleadings whether any money was actually given to Ronald, how that money was used, or that Ronald is consequently indebted to Robert. Accordingly, the motion to dismiss is GRANTED as to the claim for money had and received.

### IV. CONCLUSION

Ronald's motion to dismiss is DENIED as to Robert's claims for breach of contract and unjust enrichment but is GRANTED as to Robert's claim for money had and received.

7

The Court previously granted leave to amend to cure the original counterclaim's insufficiencies in alleging Robert's original claim for money had and received, and Robert's amended counterclaim failed to allege any new facts substantiating the plausibility of that claim.  Therefore, the Court does not grant further leave to amend.

Ronald must answer the amended counterclaim for breach of contract and unjust enrichment within 14 days.

**IT IS SO ORDERED.**

Dated: June 17, 2019

_____
NATHANAEL M. COUSINS
United States Magistrate Judge